I must respectfully dissent from the opinion and judgment of the majority for the following reasons.
The majority concludes that the statute of frauds is not applicable in the case at bar because appellees would be defrauded if the alleged oral contract to give them the farm was not subject to specific performance. In doing so, the majority places great significance on the fact that appellees had maintained and improved the farm through the years, in addition to the fact that appellees had co-signed on a $65,000 mortgage note for the farm which was titled at all times in appellant's name. Accordingly, they believe that appellant benefited by these actions because the farm was maintained and improved, and because he had co-signors which enabled him to get a loan to purchase the Bristolville property. I disagree. These actions may support an unjust enrichment claim, but they do not support a part performance allegation as a defense to the statute of frauds.
Generally, for an oral contract to be enforceable, and thereby create in appellees a right to specific performance instead of damages, the statute of frauds requires that the agreement to convey title to the property be in writing. R.C. 1335.05. However, under very limited circumstances, part performance of an alleged oral contract will take the agreement out of the statute of frauds. As the majority noted:
 "Part performance to be sufficient to remove an agreement from the operation of the statute of [frauds] must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo." Delfino v. Paul Davies Chevrolet, Inc., (1965), 2 Ohio St.2d 282, paragraph four of the syllabus. See, also, Easterling v. Easterling (May 29, 1998), Portage App. No. 97-P-0081, unreported, at 6-7, 1998 Ohio App. LEXIS 2348. (Emphasis added.)
 Thus, there must be evidence of "unequivocal acts * * * which are exclusively referable to the agreement * * *" for there to be a valid defense of part performance of the alleged contract, in addition, detrimental reliance by the person claiming that a contract exists. However, "[i] the performance can reasonably be accounted for in any other manner or if plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute." (Emphasis added.) Delfino at 287. To overcome the operation of the statute of frauds, there must be clear and convincing evidence that the parties intended to enter into an agreement, and that the aggrieved party performed acts which changed his position to his detriment in reliance on the promise. Stoops v. Miller (1994), 97 Ohio App.3d 265, 269.
It is therefore a very high burden which is placed on the party claiming that specific performance is warranted on a claimed oral promise to convey land. Here, there is absolutely no clear and convincing evidence in the record showing that the parties intended to enter into an agreement or that appellees detrimentally changed their position based on any alleged oral promise by appellant to give them the farm when the mortgage was paid off. To the contrary, appellees were provided with a home to live in and employment with which to support themselves.
Appellees originally began living and working on the farm in 1979. Immediately prior to that time, Jeff Janson, Marsha Gurich's brother, decided he no longer wanted to continue farming on the property. Whether appellees asked appellant if they could move onto the farm, or whether appellant asked appellees to do so, is a question in dispute. The evidence shows that appellees began making a monthly $462 payment to a bank which covered the mortgage payment at that time. This was the same amount that Jeff had been paying while he lived on the property. In addition to making the mortgage payment, appellees assumed the responsibility of paying off a loan that Jeff had taken out to purchase farm equipment.[1] Appellees paid no rent beyond the mortgage payment, and all moneys generated were used to pay their living and farm expenses, which included, among other things, the farm equipment loan and the mortgage payment.
The evidence also showed that at the time appellees took over operation of the farm, the property was in a dilapidated condition and that appellees substantially improved the property to achieve a better classification for the milk produced on the farm. However, appellees were the immediate beneficiaries of the improvements because they were able to increase the income derived from the sale of the milk. The income in turn financed the improvements on the property, paid for other expenses associated with the operation of the dairy farm, and provided appellees with their primary source of personal income.
Factually, the trial court found, and the majority agrees, that while appellees may have been helping appellant run the farm and his other business, their only expectation until 1985 was that someday they, along with Marsha Gurich's siblings, would inherit all of appellant's property. Thus, there is an implicit acknowledgement that this was merely an expectation and not a specific promise. It is also implicit that their efforts were intended to benefit others than themselves.
Nevertheless, the majority independently concludes that by co-signing on the $65,000 promissory note, appellees detrimentally relied on appellant's alleged promise to convey title to the farm when the mortgage was paid off. Essentially, it is the majority's position that the act of simply co-signing the promissory note was enough to establish detrimental reliance.
However, this is not what the trial court found. Instead, the trial court determined that the co-signing of the note, in addition to helping appellant through the years with his other businesses, supported the alleged oral agreement.
The majority correctly points out that this latter finding is not supported by the evidence. Appellees never testified that they believed their prior work in the other businesses was part of the consideration for the property. Thus, evidence concerning the prior work should have only been viewed as providing the factual background for the case. Marsha Gurich admitted that until 1985 she never had any expectation of getting the farm when the mortgage was paid off. Despite this, the majority concludes that, while the trial court may have cited improper factors, its conclusion that the alleged agreement between the parties was enforceable was correct.
This ruling gives appellees a significant windfall. The evidence shows that while appellees only paid $462 per month to live on and work the farm, the rental value of the property was approximately $700 to $900 per month. Moreover, when the farm was appraised in 1997, the market value of the entire property was nearly $250,000.[2]
There is simply no clear and convincing evidence of "unequivocal acts " which is exclusively referable to their alleged agreement. For the reasons that follow, I find no record of clear and convincing evidence that appellees changed their position to their detriment so as to make it impossible or impractical to place the parties in the status quo.
As was noted in Delfino, before part performance can remove an agreement from the operation of the statute of frauds, the court must first exclude the possibility that "the [part] performance can reasonably accounted for in any other manner[.]" Delfino at 287. In 1985, two events took place, apparently simultaneously. One, a fire destroyed appellees' residence on the farm; and two, appellant, who had just remarried, refinanced the farm so that he could purchase an additional piece of property in Bristolville. Accordingly, approximately half of the new $65,000 mortgage was used to finance the new property while the other half was used to pay off the remaining first mortgage on the farm. Appellant also contributed his $25,000 fire insurance proceeds to the construction of a new home on the farm. Appellees added their own renter's insurance policy payment of $15,000 as well as a personal contribution of approximately $5,000 to the construction costs.
The new mortgage payment was $693.72. The record shows that the entire mortgage was paid off twenty years early because appellant not only paid the difference in the new monthly payment, but he also paid a substantially larger monthly payment than required. At the same time, appellees continued to make their standard $462 payment. Thus, while there may be evidence of unjust enrichment, there was still no clear and convincing evidence of the elements required for removal from the statute of frauds and the application of the remedy of specific performance.
To the contrary, there are compelling reasons why appellees would have participated in the manner in which they did. The primary reason was that it was a great deal for them. Testimony at trial revealed that in 1979, Marsha Gurich's brother Jeff decided he no longer wanted to work on the farm. Appellees had been renting other farm property and were having difficulties making ends meet. So when the opportunity to work and live on appellant's farm arose, appellees took advantage of the situation. In return for making the monthly mortgage payment, appellees were allowed to live rent free in the house located on the property, run the farm as their own business, control the income, and keep all of the profits as their primary source of income.
Further, when the house was destroyed by fire, appellees were able to secure brand new housing. There was testimony that the original house was in terrible condition and of minimal value. The refinancing made it possible for the original mortgage on the entire farm to be paid off, using one-half of the $65,000 obtained from the refinancing.[3]
Appellees were further assisted because appellant had maintained the fire insurance policy which provided an additional $25,000 for the new home.
Finally, the record indicates that the issue of title only arose in 1991 when a major dispute over another subject effectively divided the family. It was at that time that appellees ceased providing services to appellant's other businesses but continued working the farm and paying the $462 until the mortgage was paid off in 1994. It was not until the mortgage was fulfilled that this suit arose.
This case is a perfect illustration of the wisdom behind the statute of frauds. At common law, there were few issues, which generated such a protective stance on the part of the courts as the issue of land title and ownership. Nothing was so important to the stability of society as the ability to hold and convey unclouded title to land. Once the issue of credibility is allowed to become a factor in that determination of ownership and title, then the purpose of requiring a written agreement is defeated.
That is precisely what has happened in this instance. The majority and the trial court relied on determinations of credibility to support the various findings of part performance and detrimental reliance. However, every argument of part performance and detrimental reliance on the part of appellees can be countered by a reasonable interpretation contra to the existence of the alleged oral agreement. None of appellees' acts were "unequivocal;" hence, there is no clear and convincing evidence to support enforcement of the alleged agreement. Appellees' investment of $20,000 in the new home may have given them a claim for unjust enrichment. However, it did not rise to the level of part performance so as to remove any alleged agreement from the statute of frauds.
While some form of valid oral contract for services or unjust enrichment may be construed from the facts, the remedy would be money damages rather than specific performance. The trial court found that:
 "* * * the Defendant [appellant] used the general promise that some day this will all be yours to encourage and induce the family members to continue to render services to him and to his businesses. * * * [H]e induced their continued participation in his businesses by enabling them to obtain housing and promising them that at some future point in time, their endeavors would be rewarded." (Emphasis added.)
These findings of fact themselves indicate that no specific agreement was ever made. However, a mere promise to make a gift or bequest is not a contract, written or oral. I do not dispute that appellant probably told appellees that they would inherit some day, along with their siblings. However, it is considerably less clear that in exchange forthat promise, appellees agreed to sign the mortgage, live on and work thefarm. This is particularly so because there were numerous other benefits which ran to appellees' favor from the arrangement.
There is no evidence that demonstrated how appellees were financially damaged by the arrangement, except possibly by the expenditure of $20,000 on the construction of the new home. Even that possibility is suspect in light of appellees' acknowledgement that their only expectation at the time of the fire was that of inheritance. If appellant had simply pocketed his insurance proceeds or had applied it to the first mortgage, appellees would have had little recourse. While they may have been able to finance a home using just their own $20,000, they still needed a place to put it. And, at that point in time, they were making no claim to the farm beyond an expectation of inheritance.
It was not until appellees became concerned in 1991 that they might be disinherited that they advanced the claim that appellant had promised them the farm when the mortgage was paid off. Even the trial court recognized that while there may have been a "general promise" as to "some future point in time," there was no specific agreement. Unfortunately the trial court and the majority did not follow that thought to its legal conclusion.
Appellant may have been a wily old fox who might be accountable in money damages for unjust enrichment, appellees' alternative claim, but he had not lost his right to the application of the statute of frauds. Unfortunately for appellees, the trial court found that there was insufficient evidence of damage to support the theory of unjust enrichment. Regardless, appellant's actions and those of appellees did not suffice to exempt from the statute of frauds any alleged promise to convey the farm itself. There were no unequivocal acts, there was no clear and convincing evidence, particularly of agreement; and the alleged part performance could be accounted for in an equally plausible way which favored appellant's version of the events. Thus, Defino and Stoops are certainly not satisfied.
As a result, I respectfully, but emphatically, dissent.
JUDGE JUDITH A. CHRISTLEY
[1] Who owns the equipment is not at issue in this dispute.
[2] There was no evidence offered as to the mortgage balance or the equity position in 1979. All that is known is that in 1973, a mortgage was taken for $59,000.
[3] Apparently the bank and the insurance company agreed to use the refinancing proceeds instead of the insurance proceeds to pay off the first mortgage. The record is not exactly clear as to the specifics.